

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS**

FILED

FEB 1 3 2020

Clerk, U.S. District Court
Texas Eastern

| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,** **Plaintiff,** **v.** 360 Health Services, LLC, Nicholas Pape, Nicholas Jenkins, Dr. Howard Newman, DC, Leverage Management Solutions, LLC, G5 Medical Supply, LLC, Christian Garguilo, and John/Jane Does 1-5 **Defendant** | § § § § § § § § § § | **4:20cv109-ALM-KPJ** |

### Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. 360 Health Services, LLC is a Florida corporation that can be served via Corp Officer Nicholas Jenkins 10436 Bow Ct., Boca Raton, FL 33498 or Nicholas Pape 19615 Dinner Dr., Boca Raton, 33498, 11745 Preservation LN, Boca Raton, FL 33498 or 399 W. Camino Real #5850101 Boca Raton, FL 33432 .

3. Nicholas Pape is a natural person and can be served at 19615 Dinner Dr., Boca Raton, 33498, 11745 Preservation LN, Boca Raton, FL 33498 or 399 W. Camino Real #5850101 Boca Raton, FL 33432 .

4. Nicholas Jenkins is a natural person and can be served at 10436 Bow Ct., Boca Raton,

FL 33498

5.  Leverage Management Solutions, LLC is a Florida corporation that can be served via Reg Agent/corp officer Nicholas Jenkins 10436 Bow Ct., Boca Raton, FL 33498 or Nicholas Pape 19615 Dinner Dr., Boca Raton, 33498, 11745 Preservation LN, Boca Raton, FL 33498 or 399 W. Camino Real #5850101 Boca Raton, FL 33432 .

6.  Dr. Howard Newman is a licensed doctor in Florida and can be served at 6775 NW 65th TER, Parkland, FL 33067.

7.  G5 Medical Supply, LLC, is a Florida corporation that can be served at 77 NE 3rd Ave., Deerfield Beach, FL 33441 or via Reg Agent Christian Garguillo 1411 NE 116th St., Miami, FL 33161.

8.  Christian Garguilo is a natural person and executive of G5 Medical Supply, LLC and can be served at 1411 NE 116th St., Miami, FL 33161

9.  John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

10. Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

11. **Personal Jurisdiction.**  This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents,

including the Plaintiff.

12. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of all the Defendants in this complaint.

13. **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

14. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

15. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency

purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.,* that the consumer will

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

receive future calls that deliver prerecorded messages by or on behalf of a specific

seller; and (2) having received this information, agrees unambiguously to receive

such calls at a telephone number the consumer designates. In addition, the written

agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

24. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

*1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks

omitted). FCC regulations "generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In the Matter of*

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC

Rcd. 12391, 12397 ¶ 13 (1995).

25. The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations

of either section 227(b) or section 227(c) that are committed by third-party

telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28

FCC Rcd. 6574, 6574 ¶ 1 (2013).

26.  Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569

F.3d 946, 951 – 52 (9th Cir. 2009).

27.  A corporate officer involved in the telemarketing at issue may be personally liable

under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-

10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any

courts have held that corporate actors can be individually liable for violating the

TCPA where they had direct, personal participation in or personally authorized the

conduct found to have violated the statute." (internal quotation marks omitted));

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If

an individual acting on behalf of a corporation could avoid individual liability, the

TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

28. The Texas Business and Commerce code has an analogus portion that is related to the

TCPA and was violated in this case.

29. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing

damages.

### FACTUAL ALLEGATIONS

30. This case relates to medicare fraud being perpetuated by the Defendant telemarketers

and their respective corporations that are placing calls to consumer in an attempt to

defraud medicare.

### Calls to the Plaintiff

31. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that

contained a pre-recorded message and were initiated using an automated telephone

dialing system and pre-recorded message to the Plaintiff's cell phone ***-***-1977.

32. On November 12, 2019, the Plaintiff recieved at least 3 calls directly from 360

Medical from 855-360-5460 to his cell phone. These calls were initiated using an

automated telephone dialing system as indicated by a 3-4 second delay of dead air

and an audible tone when connecting. The agent was asking questions about joint

pain and offered a free brace paid for by Medicare.

33. The Plaintiff recieved at least 22 calls to his cell phone that were unwanted, initiated using an ATDS, without prior express written consent, and failed to identify the callers and were unrelated to any emergency purpose.

34. It is a false claim and fraudulent billing practice to solicit for any Medicare services under section 1834(a)(17) of the Social Security act with unsolicited telephone contacts. Payments are prohibited for reimbursement for claims made via telemarketing solicitations, and suppliers that knowingly engage in this practice can be terminated from the Medicare program if there is an established pattern aof contacts in violation of the anti-solicitation prohibitions.

35. In this case, the Defendants knew they were falsely billing the government as the Plaintiff was live transferred in from the foreign caller to the agents of G5 Medical who referred the order to 360 Medical.

36. During one call, the Plaintiff was sent a physician order form bearing the name of Dr. Howard Newman, an individual the Plaintiff has never spoken with and who has never reviewed any medical records for the Plaintiff or Mary Mcrae. (See Ex A) and the email came from Greg@360healthsvc.com. (Ex B)

37. These calls were not related to any emergency purpose.

38. The Plaintiff never consented to recieving automated calls or calls with pre-recorded messages from any of the defendants or their agents.

39. The Plaintiff was emailed an application for services from 360 Medical for the exact same braces that the Plaintiff discussed during the phone calls with the overseas and domestic sales agents.

40. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his

monthly allotment.

41. The calls were unwanted and annoying to the Plaintiff and disrupted his day multiple times.

42. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from the defendants consumed part of this capacity.

43. No emergency necessitated the calls

44.  Each call was sent by an ATDS.

**Knowing and  Willful Violations of Telemarketing Regulations**

45.  Mr. Cunningham asked for an internal do-not-call policy from a corporate executive, but he refused and hung up the phone.

46. Nicholas Pape, Nicholas Jenkins,, Dr. Howard Newman, DC, Christian Garguilo, knowingly violated the TCPA by initiating automated calls  to the Plaintiff.

47. Nicholas Pape, Nicholas Jenkins,, Dr. Howard Newman, DC, Christian Garguilo never sent Mr. Cunningham any do-not-call policy.

48.  On information and belief, the corporate defendants did not have a written do-not-call policy while it was sending Mr. Cunningham text messages.

49.  On information and belief, Nicholas Pape, Nicholas Jenkins,, Dr. Howard Newman, DC, Christian Garguilo did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

50. Nicholas Pape, Nicholas Jenkins,, Dr. Howard Newman, DC, Christian Garguilo knew they were illegally telemarketing and engaging in fraudulent behavior because they were receiving live transfer calls from foreign call centers they hired to generate leads for medicare, which is a false claim and fraudlent act in violation of Medicare

rules. The Defendants used overseas telemarketers who called using spoofed caller ID's in order to hide their material involvement in this fraudulent medicare scheme.

### The Plaintiff's cell phone is a residential number

51. The text messages were to the Plaintiff's cellular phone \*\*\*-\*\*\*-1977which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

52. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

53. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.  FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.    Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.    Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.    Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and the defendant's name in the solicitations (3) by placing calls to a number registered on the national do-not-call list.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.     Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

### IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G.      An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H.      Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                                    February 6, 2020

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075

615-348-1977